UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN
MILWAUKEE DIVISION

RONALD BRALICK
8890 North 96th Street
Milwaukee, Wisconsin 53224

      Plaintiff,

      v.                                 Case No: 15-CV-1406

MESSER CUTTING SYSTEMS, INC.
W141 N9427 Fountain Boulevard
Menomonee Falls, Wisconsin 53051

      Defendant.

## COMPLAINT

COMES NOW the Plaintiff, Ronald Bralick, by his counsel, HEINS & MINKO LLC, by Attorneys Janet L. Heins and Alan Freed, Jr., as and for a claim against the Defendant, and alleges and shows to the court as follows:

### JURISDICTION

1. This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331, as this case involves a federal question under the Family and Medical Leave Act ("FMLA"), 29 U.S.C. § 2601 *et seq.*, and the Americans with Disabilities Act Amendments Act of 2008 ("ADAAA"), 42 U.S.C. §12101 *et seq.*

2. The unlawful employment practices of which Plaintiff complains occurred within the Eastern District of Wisconsin, and therefore, venue is proper in this District pursuant to 28 U.S.C. § 1391(b).

**PARTIES**

3. Plaintiff, Ronald Bralick, is an adult male resident of the State of Wisconsin residing in Milwaukee County with a post office address of 8890 North 96th Street #8, Milwaukee, Wisconsin, 53224.

4. Defendant, Messer Cutting Systems, Inc. is a Wisconsin corporation with a principal office location at W141 N9427 Fountain Boulevard, Menomonee Falls, Wisconsin 53051.

**BACKGROUND**

5. Defendant is a covered employer for purposes of the FMLA.

6. During Plaintiff's employment with Defendant, he was not a "key employee" as defined in 29 C.F.R. § 825.217(a).

7. Defendant, at all times material herein, employed at least 50 employees within 75 miles of Plaintiff's work site.

8. Plaintiff began working for Defendant as a Welder on or about July 23, 2012.

9. At all times material herein, Plaintiff performed his work duties in accordance with the reasonable expectations of the Defendant.

10. Plaintiff was never issued any verbal or written warning by any of his supervisors suggesting that his job was ever in jeopardy.

11. Plaintiff's job duties included, but were not limited to, performing welding operations, making welding fixtures, using hand and power tools, maintaining equipment, and operating materials handling equipment (cranes, forklift, etc.).

12. On or about September 16, 2013, while shoveling debris into a hopper at work, Plaintiff experienced sudden sharp pains in his left lower back, left hip, and left leg. Plaintiff informed his shift supervisor Doug Curley, and then he went home for the remainder of his shift.

2

13. The next day, on September 17, 2013, Plaintiff reported his injury from the previous day to his regular supervisor Michael Staeger. Both Plaintiff and Mr. Staeger agreed that they would not fill out an accident report at that time.

14. On or about September 20, 2013, Plaintiff visited a physician who advised him to get an MRI of his lower back. Plaintiff was also prescribed Morphine ER and Hydrocodone 10/325 at this time.

15. Upon his return to work, Plaintiff informed Mr. Staeger of his doctor visit and the pain medication he was prescribed.

16. On or about October 14, 2013, Plaintiff received an MRI which revealed that his back pain was due to lumber spondylosis (without myelopathy) and lumbar radiculopathy, because Plaintiff had little to no padding left in any of his discs, resulting in a disability.

17. As a result of Plaintiff's MRI results, Plaintiff was sent to a pain management doctor, who provided him with six cortisone injections over two visits. None of these injections relieved Plaintiff's back pain.

18. On or about June 5, 2014, Plaintiff's pain management doctor, Dr. Kostandinos Tsoulfas, suggested that Plaintiff have a spinal stimulator implanted to relieve his pain.

19. While waiting for the implantation procedure, Plaintiff was directed to continue taking Morphine ER and Hydrocodone 10/325 every four hours.

20. After his June 5, 2014 appointment, Plaintiff again conveyed his need for medication to Defendant.

21. On or about June 5, 2014, Dr. Tsoulfas provided Plaintiff with a work restriction stating that Plaintiff could return to work with light activity limitations—specifically a 20 pound lifting restriction.

22. Plaintiff provided Defendant with his work restriction on or about June 5, 2014.

23. On or about June 5, 2014, Plaintiff filed an accident report for the September 16, 2013 accident, in which he described the accident, his treatment and medication, and the spinal stimulator option.

24. Plaintiff also verified in his report that his manager, Michael Staeger, was notified of Plaintiff's medications when Plaintiff began taking them.

25. Upon receiving Plaintiff's work restriction on or about June 5, 2014, Linda Sierszynski, a Human Resources Manager for Defendant, questioned Plaintiff about his recent medication history, to which Plaintiff responded that he had been taking pain medication for his back since his work accident in September 2013.

26. Ms. Sierszynski immediately suspended Plaintiff from work effective on or about June 5, 2014 and indicated that Plaintiff could not return to work until his doctor said Plaintiff was able to work.

27. Plaintiff had no issues performing his work while on the medications, and Plaintiff's doctor provided no work restrictions relating to his medication.

28. On or about June 9, 2014, Ms. Sierszynski sent a letter to Plaintiff stating that Plaintiff would not be allowed to return to work while taking his current medications.

29. Ms. Sierszynski's letter indicated that once Defendant had received more information about Plaintiff's ability to work from Plaintiff's physician, a decision would be made about whether Plaintiff could return to work.

30. On or about June 12, 2014, Dr. Tsoulfas provided Plaintiff with an updated work restriction that only provided for "no driving heavy equipment."

31. On or about June 20, 2014, in anticipation of taking FMLA leave, Plaintiff's pain management provider, Jill Pocius, NP, completed a "Certification of Health Care Provider for Employee's Serious Health Condition" that described Plaintiff's condition, his likely course of

4

treatment, and his anticipated time off of work through June 2015, which was estimated to be 1-3 days (4-8 hours per day) per month for treatment and up to 4 days per month for flare ups.

32. Jill Pocius's certification indicated that Plaintiff would likely need time off of work for his surgery scheduled for on or about July 18, 2014.

33. Jill Pocius's certification did not indicate or suggest that Plaintiff was unable to work or otherwise restricted in his work due to his medications.

34. Ms. Sierszynski sent letters to Ms. Pocius on June 23, 2014 and July 2, 2014 requesting that Ms. Pocius certify that Plaintiff could safely perform his job duties.

35. In Ms. Pocius's June 23, 2014 response to Ms. Sierszynski's request for information, Ms. Pocius recommended that Defendant obtain their own expert to perform a real time assessment of whether Plaintiff could safely perform his job responsibilities.

36. Defendant never allowed Plaintiff to return to work.

37. Defendant never had Plaintiff examined by a medical professional to determine whether he could safely perform his job duties.

38. Plaintiff's medical team responded to Ms. Sierszynski's requests no less than four times in the form of letters, return to work releases, and related documentation, but Ms. Sierzynski refused to accept these materials.

39. On or about July 14, 2014, four days before his previously scheduled back surgery, Plaintiff received a certified letter terminating his employment retroactive to June 5, 2014, stating that Plaintiff was terminated because he was on pain medication and his doctor was not communicating with Defendant.

40. At no time after his back injury or while on medication for his back injury did Plaintiff present as a safety hazard to himself or fellow employees.

41. On or about September 24, 2014, Plaintiff filed an employment discrimination

5

Case 2:15-cv-01406-PP   Filed 11/24/15   Page 5 of 7   Document 1

complaint against Defendant with the Wisconsin Equal Rights Division ("ERD"), designed as ERD Case No. CR201402966, and cross-filed with the U.S. Equal Employment Opportunity Commission ("EEOC") as EEOC Case No. 26G201500025C. In the complaint, the Plaintiff alleged that Defendant discriminated against him in the terms and conditions of his employment and terminated his employment on the basis of his disability.

42. The EEOC issued Plaintiff a Notice of Right to Sue for this case on or about October 9, 2015.

43. Plaintiff has exhausted all of his administrative remedies and satisfied all conditions precedent to bringing this action.

### FIRST CLAIM FOR RELIEF — ADAAA DISCRIMINATION

44. Plaintiff realleges and incorporates paragraphs 1-43 of this complaint by reference

45. Defendant discriminated against Plaintiff in the terms and conditions of his employment and in terminating him based on his disability in reckless disregard of his federally protected rights under the Americans with Disability Act Amendments Act of 2008, 42 U.S.C. §12101 *et seq.*

46. As a result of Defendant's intentional discrimination, Plaintiff has suffered damages in the form of loss of wages and other employment benefits, attorney fees and costs, and other damages that she will establish at trial.

### SECOND CLAIM FOR RELIEF – FMLA INTERFERENCE

47. Plaintiff realleges and incorporates paragraphs 1–46 of this complaint by reference.

48. By terminating Plaintiff for attempting to exercise his rights under the Family and Medical Leave Act of 1993, as amended, 29 U.S.C. § 2601, *et seq.*, Defendant intentionally

6

interfered with Plaintiff's exercise of those rights.

49. As a result of Defendant's intentional violation of the FMLA, Plaintiff has suffered damages in the form of lost wages and other employment benefits and insurance.

**WHEREFORE**, Plaintiff respectfully requests that this Court:

1. Order Defendant to make Plaintiff whole by providing appropriate back pay, front pay and/or reinstatement, liquidated damages, compensatory damages, punitive damages, pre-judgment and post-judgment interest, and reimbursement for other benefits and expenses in an amount to be shown at trial;

2. Grant to Plaintiff his attorneys' fees, costs and disbursements as provided by 29 U.S.C. § 2617(a)(3), and by all other applicable statutes and provisions;

3. Grant to Plaintiff whatever other relief this Court deems just and equitable.

Dated this 24th day of November, 2015.

HEINS & MINKO LLC
Counsel for the Plaintiff


By: ___*s/ Janet L. Heins*___ .
Janet L. Heins, SBN 1000677

HEINS & MINKO LLC
1001 West Glen Oaks Lane, Suite 101
Mequon, Wisconsin 53092
(262) 241-8444 voice
(262) 241-8455 facsimile
e-mail: jheins@heinslawoffice.com

7

Case 2:15-cv-01406-PP   Filed 11/24/15   Page 7 of 7   Document 1